**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **Dr. Jafar Jafarov**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Complaint** |
| | ) | *Civil Action No.:* 1:23-cv-3372 |
| **United States Citizenship and** | ) | |
| **Immigration Services** (USCIS); | ) | |
| **Alejandro Mayorkas**, Secretary of | ) | |
| the U.S. Department of Homeland | ) | |
| Security ("DHS"); **Ur M. Jaddou**, | ) | |
| Director of USCIS; **Loren Miller**, | ) | |
| Director of the USCIS Nebraska | ) | |
| Service Center, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

<u>**COMPLAINT FOR DECLARATORY RELIEF**</u>

Plaintiff, Dr. Jafar Jafarov ("Plaintiff", "Petitioner", "Beneficiary", or "Dr. Jafarov") by and through his undersigned counsel, commences this action against the above-named Defendants, and states as follows:

## I.       <u>PRELIMINARY STATEMENT</u>

1.  This action is brought against the Defendants for declaratory judgment and review of an agency action under the Administrative Procedure Act based on the Defendants' unlawful, arbitrary, and *ultra vires* denial of the EB-1 I-140 Immigrant Petition for Alien Worker

filed by Dr. Jafarov on his own behalf, by means of self-petitioning, seeking to classify himself as an individual of extraordinary ability.

2. Plaintiff filed an I-140 petition with U.S. Citizenship and Immigration Services ("USCIS") seeking an immigrant visa under the employment-based first preference category ("EB-1") of the Immigration and Nationality Act ("INA") for Plaintiff as an individual of extraordinary ability. This immigrant visa category allows a foreign national to obtain permanent residence in the U.S. if he can prove by a preponderance of the evidence standard that he (1) meets at least three (3) of the required regulatory criteria under 8 CFR §204.5(h)(3); AND, that he (2) meets the final merits determination by showing that he has sustained national or international acclaim—meaning that he has risen to the very top of his field.

3. This complaint is relatively simple in that it involves answering one basic question:

> Was evidence provided to prove that Plaintiff meets the final merits determination by showing that he has sustained national or international acclaim – meaning that he has risen to the very top of his field.[1]

4. In accordance with the applicable law and policy guidance relating to proper adjudication of an EB-1A Extraordinary Ability filing, the objective evidence on record included with the EB-1 I-140 filing confirms, by a preponderance of the evidence, that (1) Plaintiff in fact meets at least six criteria for EB-1 Extraordinary Ability eligibility under 8 CFR

---

[1] In order to qualify for an EB-1 Extraordinary Ability petition, a petitioner must prove (1) that she meets at least three (3) of the required regulatory criteria under 8 CFR 204.5(h)(3) and (2) that she has sustained national or international acclaim – meaning that she has risen to the very top of his field. Here, USCIS agreed in its decision that Plaintiff meets at least three of the requires regulatory criteria. As such, this question is already answered. The only outstanding question is whether Plaintiff meets the final merits determination.

204.5(h)(3); AND (2) Plaintiff in fact meets the final merits determination confirming that he has risen to the very top of his field.

5.   The record in this case shows that Defendants arbitrarily and unlawfully denied the I-140 by finding that **Plaintiff did not meet the final merits determination and was unable to demonstrate that he has risen to the very top of his field**. In arbitrarily and unlawfully denying the I-140 petition, Defendants misstate facts, improperly ignore and discount probative and persuasive evidence, apply fictitious *ultra vires* rules and apply an artificially heightened standard of review.

6.   Under administrative law, USCIS Adjudicators do not have unfettered discretion. They do not have the authority artificially create *ultra vires* rules and decisions must be justified based on the administrative record. In this case, the denial decision is not based on the clear and persuasive evidence on record confirming that Plaintiff meets the criteria for an EB-1(A) approval.

## II.    PARTIES

7.   Plaintiff, **Dr. Jafar Jafarov**, is a national of Azerbaijan who possesses a PhD in Computer Science from the University of Chicago – a leading university in the United States with an international reputation for research and the sciences. His most recent employment was with Meta Platforms, Inc. — formerly known as Facebook, Inc.

8.   Defendant, **U.S. Citizenship and Immigration Services**, is an agency of the federal government within the Department of Homeland Security and is responsible for the administration of laws and statutes governing immigration and naturalization and the adjudication of petitions for immigration benefits, including petitions for alien workers.

9.  Defendant, **Alejandro Mayorkas**, is the Secretary of the United States Department of Homeland Security ("DHS"), with responsibility for the administration of applicable laws and statutes governing immigration and naturalization. He is generally charged with enforcement of the Immigration and Nationality Act and is further authorized to delegate such powers and authority to subordinate employees of DHS. More specifically, the Secretary is responsible for the adjudication of petitions for alien workers.

10. Defendant, **Ur M. Jaddou**, is the Director of U.S. Citizenship and Immigration Services, and is responsible for the administration of immigration and naturalization adjudication functions and establishing immigration services policies and priorities. These functions include adjudication of EB-1 immigrant visa petitions.

11. Defendant, **Loren Miller**, is the Director of the USCIS Nebraska Service Center, which is directly charged with responsibility for adjudicating I-140 immigrant petitions for foreign national workers.

## III.    JURISDICTION AND VENUE

12. Jurisdiction in this case is proper under 28 U.S.C. § 1331, 5 U.S.C. §§ 701 and 702 *et. seq.,* and 28 U.S.C. § 2201 *et. seq.* Relief is requested pursuant to said statutes. Specifically, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Further, the Declaratory Judgment Act, 28 U.S.C. § 2201, provides that: "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or

not further relief is or could be sought." Review is also warranted, and relief sought, under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, 702 et seq., and § 706(1).

13. Venue properly lies within this district pursuant to 28 U.S.C. § 7 1391(e), in that this is an action against officers and agencies of the United States in their official capacities, brought in the District where Plaintiff is domiciled.

## IV.    EXHAUSTION OF REMEDIES

14. The denial of the I-140 Petition is a final agency action. There is no statutory or regulatory requirement to appeal to the agency. *See Darby v. Cisneros*, 509 U.S. 137, 146-47 (1993); *RCM Techs. V.* 18 *DHS*, 614 F.Supp.2d 39, 45 (D.D.C. 2009).

## V.    INTRODUCTION TO THE EB-1(A) IMMIGRANT VISA PROGRAM

15. The INA provides for immigrant visas to be made available each year to a certain number of foreign workers who fall within the employment-based first preference category. 8 U.S.C. § 1153(b)(1).

16. Specifically, Section 203(b) of the Immigration and Nationality Act states, in pertinent part:

> (1) Priority workers. -- Visas shall first be made available ... to qualified immigrants who are aliens described in any of the following subparagraphs (A) through (C):
>
> (A) Aliens with extraordinary ability. An alien is described in this subparagraph if—
>
> (i) the alien has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation,

    (ii)  the alien seeks to enter the United States to continue work in the area of extraordinary ability, and

    (iii) the alien's entry into the United States will substantially benefit prospectively the United States.

17. The regulations at 8 C.F.R. § 204.5(h)(2)-(3) define "extraordinary ability" as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor," and require that the petitioner demonstrate the alien's sustained national or international acclaim and that his or her achievements have been recognized in the field. The petitioner must establish such acclaim and recognition either through evidence of a one-time achievement (that is, a major, internationally recognized award) or through the submission of qualifying evidence under at least three of 10 categories of evidence. 8 C.F.R. § 204.5(h)(3)(i)-(x). If these standards in 8 C.P.R. § 204.5(h)(3)(i)-(x) do not readily apply to the beneficiary's occupation, comparable evidence may be submitted to establish eligibility. 8 C.F.R. § 204.5(h)(4).

18. In *Kazarian*, the Ninth Circuit described the "extraordinary ability" regulations entailing a two-step review, described below. *Kazarian v. USCIS*, 596 F.3d 1115, 1121-22 (9th Cir. 2010). Step one is the "antecedent procedural question" of whether the petitioner has provided at least three types of evidence described in 8 C.P.R. § 204.5(h)(3). *Id.* at 1121. If so, the agency proceeds to step two, a "final merits determination" of whether a petitioner is at the very top of his or her field of endeavor. *Id.*

19. During step one, USCIS must "count the types of evidence provided," and may not "unilaterally impose novel substantive or evidentiary requirements beyond those set forth at 8 C.F.R. § 204.5." *Kazarian*, 596 F.3d at 1121-22.

20. During step two, USCIS must complete a "final merits determination", which the court described as follows:

> If a petitioner has submitted the requisite evidence, USCIS determines whether the evidence demonstrates both a "level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor," 8 C.P.R. § 204.5(h)(2), and "that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise." 8 C.F.R. § 204.5(h)(3). Only aliens whose achievements have garnered "sustained national or international acclaim" are eligible for an "extraordinary ability" visa. 8 U.S.C. § 1153(b)(1)(A)(i).

21. During this second step, USCIS considers not only the quantum of evidence, but also its quality (including relevance, probative value, and credibility). *See Matter of Chawathe*, 25 I&N Dec. at 376 (citing *Matter of E-M-*, 20 I&N Dec. 77, 80 (Comm'r 1989)). If the record establishes that it is more likely than not that the individual has sustained national or international acclaim and recognition in the field of expertise, and is one of that small percentage who has risen to the very top of their field of endeavor, the petitioner has met his or her burden of proof. See *id*. at 376.

22. USCIS' policy and guidance and practices incorporate the bifurcated two-step approach set forth in *Kazarian* when adjudicating EB-1 Extraordinary Ability I-140 filings. While related, each step is separate and distinct as part of the analysis of the case.

23. USCIS provides guidance to its adjudicators through the Adjudicator's Field Manual (AFM) at Chapter 22.2 confirms this approach by reading:

> USCIS officers should use a two-part analysis to evaluate the evidence submitted with the petition to demonstrate eligibility under **203(b)(1)(A) of the INA.**

> First, USCIS officers should evaluate the evidence submitted by the petitioner to determine, <u>by a preponderance of the evidence</u>, which evidence <u>objectively meets</u> the parameters of the regulatory description applicable to that type of evidence (referred to as "regulatory criteria").

> Second, USCIS officers should evaluate the evidence together when considering the petition in its entirety for the final merits determination regarding the required high level of expertise for the immigrant classification.

A. **Step One: Evaluating the Evidence Against Regulatory Criteria Under 8 CFR 204.5(h)(3)**

24. The first step in the evaluation process is determining whether the foreign national meets at least three (3) of the required regulatory criteria under 8 CFR 204.5(h)(3). <u>This evidence is reviewed under the preponderance of the evidence standard</u>.

25. The criteria under 8 CFR 204.5(h)(3) includes:

(a) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

(b) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

(c) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;

(d) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;

(e) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

(f) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

(g) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

(h) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

(i) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

(j) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

(k) If the above standards do not readily apply to the beneficiary's occupation, the petitioner may submit comparable evidence to establish the beneficiary's eligibility.

26. This first step is limited to whether the foreign national meets at least three (3) criteria, and does not involve any review of whether the foreign national has risen to the top of his field.

This is confirmed in the AFM at Chapter 22.2 which reads:

> Note: While USCIS officers should consider the quality and caliber of the evidence when required by the regulations to determine whether a particular regulatory criterion has been met, *USCIS officers should not make a determination regarding whether or not the alien is one of that small percentage who have risen to the very top of the field or if the alien has sustained national or international acclaim in Part One of the case analysis*. See the table below for guidance on the limited determinations that should be made in Part One of the E11 analysis.

**B.   Step Two: Final Merits Determination**

27. Successfully meeting at least three (3) regulatory criteria is not the end of the analysis for EB-1 Extraordinary Ability eligibility. The second and final step is the final merits determination.

28. It must be determined that the foreign national's work has been recognized in the field, that he has sustained national or international acclaim—meaning that he has risen to the very top of his field. The applicable section of Chapter 22.2 of the AFM reads:

> In Part Two of the analysis in each case, USCIS officers should evaluate the evidence together when considering the petition in its entirety to make a final merits determination of whether or not the petitioner, by a preponderance of the evidence, has demonstrated that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise, indicating that the alien is one of that small percentage who has risen to the very top of the field of endeavor.

29. USCIS must therefore follow the required bifurcated two-step approach in determining EB-1 Extraordinary Ability eligibility:

> ⇒ **Meeting at least three (3) regulatory criteria under 8 CFR 204.5(h)(3)**
>
> ⇒ **Meeting the final merits determination**

### Preponderance of the Evidence Standard

30. The evidence provided and the two-part analysis is reviewed applying the applicable preponderance of the evidence standard.

31. In confirming eligibility, it is the petitioner's burden to prove eligibility by a "preponderance of the evidence," meaning "the [petitioner] must prove it is more likely than not that each of the required elements has been met."

32. In other words, *the petitioner is required to show that each essential element is more than 50 percent likely to be true*. Thus, even if the adjudicator has some doubt as to the truth, if the petitioner submits *relevant, probative, and credible evidence* that leads the adjudicator

to believe that the claim is "probably true" or "more likely than not true," the applicant or petitioner has satisfied the standard of proof.[2]

33. It is important to understand that the legally required standard of review for EB-1 filings is "preponderance of the evidence", and **not** the much higher "clear and convincing" standard.

34. The inapplicable and much higher "clear and convincing" standard requires that the petitioner prove that an essential element is substantially more likely than not to be true, or that something has a high probability of being true. This standard sets a higher threshold than the preponderance of the evidence standard, and it is reserved only for cases such as rebutting fraudulent marriage claims or determining citizenship of children born out of wedlock. This higher clear and convincing standard cannot be applied to EB-1 filings.[3]

35. USCIS must therefore apply the preponderance of the evidence standard of review when following the two-part analysis in determining EB-1 Extraordinary Ability eligibility.

### USCIS' Guidance on How to Assess and Evaluate Evidence Provided in the Filing

### A.  USCIS' Guidance re: Prohibition Against Predetermining Evidence

36. Under applicable guidance, USCIS is precluded from having any predetermination as to what types of evidence should be available or what types of evidence the foreign national should provide as part of the filing. Chapter 22.2 of the AFM highlights the importance of not predetermining what type of evidence may be available to the foreign national. USCIS cannot be prejudiced by a belief that certain evidence should be available and eligibility

---

[2] U.S. v. Cardozo-Fonseca, 480 U.S. 421 (1987) (defining more likely than not as a greater than 50% probability)
[3] AFM Ch. 11.1(*c*)

must be determined on what evidence is presented and not on evidence USCIS thinks

should be presented. The AFM confirms this by reading:

> Remember also that you cannot predetermine the kind of evidence you think the alien should be able to submit and deny the petition if that particular type of evidence (whether one of the types listed in 8 CFR 204.5(h)(3) or "comparable evidence" under 8 CFR 204.5(h)(4) is not there. For example, you may think that if an alien is extraordinary, there should be published articles about the alien and his or her work. However, you cannot deny the petition because no published articles were submitted, if evidence meeting three qualifying criteria has been submitted that demonstrates he or she is in fact extraordinary. Approval or denial of a petition must be based on the type and *quality of evidence that is submitted, not on evidence that you think should be there.*

## B. **USCIS' Guidance re: Probative Value of Expert Reference Letters**

37. Expert reference letters represent *relevant, probative, and credible evidence* in an EB-1(A)

filing. USCIS' own guidance confirms the importance and probative value of expert

reference letters in its December 22, 2010 Policy Memorandum entitled "Evaluation of

Evidence Submitted with Certain Form I-140 Petitions; Revisions to the Adjudicator's

Field Manual (AFM) Chapter 22.2, AFM Update AD11-14". The policy memorandum

reads:

> USCIS officers should take into account the probative analysis that experts in the field may provide in opinion letters regarding the significance of the alien's contributions in order to assist in giving an assessment of the alien's original contributions of major significance. That said, not all expert letters provide such analysis. *Letters that specifically articulate how the alien's contributions are of major significance to the field and its impact on subsequent work add value.* Letters that lack specifics and simply use hyperbolic language do not add value, and are not considered to be probative evidence that may form the basis for meeting this criterion.

38. The Adjudicator's Field Manual (AFM) incorporates this same language at Chapter 22.2.

39. USCIS is therefore required to give the proper weight to expert opinions as reliable,

relevant and probative evidence to prove EB-1(A) eligibility.

40. Case law and Chapter 11.1 of the AFM supporting the proper authoritative weight to be given to expert reference opinions includes **Matter of Skirball Cultural Center**.[4] In the *Skirball* case, the AAO noted that USCIS had *not* questioned the experts' credentials, did not take issue with the experts' demonstrated knowledge of the beneficiaries' skills and history of the relevant musical genres, and did not otherwise state a reason to doubt the veracity of their testimony, therefore the letters had to be considered. The AAO noted that the expert testimony provided in the record appeared to be reliable, relevant, and probative as to the specific facts in issue, and therefore could not be dismissed. The decision reads:

> USCIS may reject an expert opinion letter, or give it less weight, if it is not in accord with other information in the record or if it is in any way questionable.... In the present matter, the director did not question the credentials of the experts, take issue with their knowledge of the group's musical skills, or otherwise find reason to doubt the veracity of their testimony. The AAO finds the uncontroverted testimony to be reliable, relevant and probative as to the specific facts in issue. Accordingly, the expert testimony satisfies the evidentiary requirement.

41. Accordingly, in a case where the RFE cites no contradictory evidence in the record, nor offers any factual basis for challenging the credibility, expertise, or knowledge on the part of the initial expert witnesses, the expert testimony evidence must be considered along with other evidence in the record.[5]

---

[4] 25 I&N Dec. 799, at 805–06 (May 15, 2012)

[5] *See also*: Failure to consider expert testimony and/or affidavits is a violation of due process. *Tun v. Gonzales*, 485 F.3d 1014 (8th Cir. 2007*); Rodriguez Galicia v. Gonzales*, 422 F.3d 529, 538–40 (7th Cir. 2005); *Lopez-Umanzor v. Gonzales,* 405 F.3d 1049, 1056–58 (9th Cir. 2005); *McDonald v. Gonzales*, 400 F.3d 684,687–88 (9th Cir. 2005). Unchallenged expert testimony cannot be rejected outright. *Banks v. Gonzales*, 453 F.3d 449, 453–54 (7th Cir. 2006). The determination of the credibility of documentary evidence should be the same as the determination of the credibility of testimony and therefore, an adverse decision must be based on "specific, cogent reasons that bear legitimate nexus to the finding." *Zahedi v. INS,* 222 F.3d 1157, 1165 (9th Cir. 2000).

42. The Federal Rules of Evidence and USCIS Adjudicators Field Manual (AFM) also confirm that USCIS is required to give the proper weight to expert opinions as reliable, relevant and probative. The AFM reads:

> Generally, any evidence that *would* be admissible under the Federal Rules of Evidence *should* be admitted in administrative proceedings. But so also, generally, should any oral or documentary evidence that is relevant and material be accepted into the administrative record. This means that a particular piece of evidence must have a tendency (no matter how small) to either prove or disprove a fact that has a bearing on the issue at hand (materiality). Despite the relatively broad admissibility of evidence in an administrative proceeding, you should familiarize yourself with the rules of evidence relating to these proceedings.[6]

43. In addition, the AFM at Chapter 11.1 reads:

> "If you decide that the statement or testimony of a petitioner or applicant, or of any other witness, is not credible, your written decision should indicate this conclusion."[7]

44. The AFM specifically notes that it is generally not enough for the adjudicator to simply say that the witness is not credible; rather the "decision should give the specific reason or reasons for [the] conclusion, and refer to the elements of the record that support the conclusion."

## VI.    FACTS

45. As set forth below, in accordance with the rules on how to adjudicate an EB-1(A) Extraordinary Ability filing, the objective, credible and probative evidence on record included with the EB-1 I-140 filing and Response to USCIS' Request for Evidence confirms, by a preponderance of the evidence, that (1) Dr. Jafarov meets at least six (6)

---

[6] AFM Ch. 11.1(a) (emphasis added)
[7] AFM Ch. 11.1(*l*)

criteria for EB-1(A) Extraordinary Ability eligibility under 8 CFR 204.5(h)(3) and (2) Dr. Jafarov meets the final merits determination confirming that he has risen to the very top of his field.

46. Plaintiff, **Dr. Jafar Jafarov**, is a national of Azerbaijan who is an expert in the field of computer science and applied mathematics. *Ex. 1 at 36.*

47. Dr. Jafarov first exhibited his expertise in this field by earning an honorable mention and multiple medals in International and National Olympiads during his high school years. *Ex. 1 at 394-401*. He later earned a PhD in Computer Science, the culmination of many years of researching and applying his expertise in his field, from the University of Chicago—a leading university in the United States with an international reputation for research and the sciences. *Ex. 1 at 58.*

48. His most recent employment was with Meta Platforms, Inc. — formerly known as Facebook, Inc. — under temporary Optional Practical Training (OPT) based on his F-1 visa. *Ex. 1 at 337.* In this role, he was part of a unique team of the world's leading computer scientists, engineers, and mathematicians working on the algorithms behind Meta Platform's widely used social media platforms, such as Facebook and Instagram.

49. In light of his extraordinary abilities and statutory eligibility, Dr. Jafarov self-petitioned this EB-1(A) I-140 petition. Therefore, Dr. Jafarov is both the petitioner and the beneficiary of the underlying immigration petition.

50. Dr. Jafarov filed his EB-1(A) I-140 petition on November 21, 2022. On November 29, 2022, Defendants issued a Request for Evidence (RFE). Dr. Jafarov timely responded with the requested evidence on January 23, 2023. *Ex. 2 at 404; Ex. 3 at 406.*

51. The compelling and persuasive evidence on record from the initial filing and RFE Response confirms Dr. Jafarov's eligibility for classification under the EB-1(A) category through documentation confirming:

⇒ Dr. Jafarov developed inherently complex and groundbreaking algorithms for purposes of Correlation Clustering that cure many of the weaknesses of previous algorithms in the field, thereby originally and meaningfully contributing to the advancement of the field. *Ex. 1 at 123-238.*

⇒ Dr. Jafarov's cutting-edge research and novel findings have garnered the attention of distinguished professionals worldwide, as Dr. Jafarov's work has been presented at leading international conferences for machine learning after having withstood several rounds of critical review by experts in the field. *Id*; *Ex. 4 at 532-562.*

⇒ Dr. Jafarov has authored various research papers that have been published and frequently cited by distinguished professionals in works that were then published in renowned conferences, thereby establishing the leading role Dr. Jafarov has assumed in his field. *Ex. 1 at 240-303.*

⇒ Dr. Jafarov's extraordinary abilities and distinguished reputation in the field have led to his frequent involvement in judging the work of others at prestigious conferences such as AISS, ITCS, and AISTATS. *Ex. 1 at 305-335.*

⇒ Dr. Jafarov's extraordinary abilities and advanced position in the field are further highlighted by the remarkably high salary Dr. Jafarov received; his total annual earnings considered "high", or above the 90th percentile, for Computer Science Research professionals in the United States. Additionally, statistics from the U.S. Bureau of Labor Statistics and O*NET OnLine confirm that Dr. Jafarov's salary

puts him in the <u>very highest</u> income level in the New York Metropolitan Area. *Ex. 1 at 337-349; Ex. 4 at 504-529.*

⇒ Dr. Jafarov's pioneering work and pioneering role in the field have solicited extensive coverage by several print and outline media outlets, including national newspapers of major importance. *Ex. 1 at 351-392; Ex. 4 at 432-502.*

⇒ Dr. Jafarov's extraordinary abilities have earned him various internationally recognized awards such as medals at the Azerbaijan Mathematical Olympiad and honorable mentions at the International Mathematical Olympiad, impressively highlighting Dr. Jafarov's superior position in the field. *Ex. 4 at 564-575.*

## **USCIS Denial Decision**

52. In a decision dated February 3, 2023, USCIS denied the I-140 petition. *Ex. 5 at 577.* As discussed in detail below, the major defects with this denial decision include USCIS' misstatement of facts, USCIS' ignoring and discounting probative reference letter evidence, and USCIS applying *ultra vires* rules.

53. In its denial decision, USCIS did confirm that the evidence provided demonstrates that Dr. Jafarov meets three (3) of the regulatory required criteria under <u>8 CFR 204.5(h)(3)</u>:

⇒ Evidence of alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specialization for which classification is sought;

⇒ Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

⇒ Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field. *Id.*

54. While USCIS confirms that Dr. Jafarov meets the minimum three (3) criteria as required under 8 CFR 204.5(h)(3), Dr. Jafarov in fact meets six (6) criteria based on the evidence provided.

55. However, Defendants mischaracterized and improperly ignored the evidence confirming that Dr. Jafarov meets the criteria for **(1)** Alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor; **(2)** Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which the classification is sought; and **(3)** The alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field. *Id.*

56. Defendants' failure to recognize that, based on the evidence presented, Dr. Jafarov meets the three foregoing criteria is not only indicative of significant issues with Defendants' review of the regulatory criteria, but also with Defendants' judgment throughout the final merits determination as Defendants continue to improperly assess Dr. Jafarov's eligibility for the immigration benefit sought.

57. Since USCIS confirmed that Dr. Jafarov meets at least three (3) criteria under 8 CFR § 204.5(h)(3) and therefore meets the first step of EB-1 eligibility, the denial decision is based on Defendants' conclusory statement concerning the final merits determination that "the petitioner has not established that he has garnered wide attention from the field based on his work of peer reviews, published scholarly articles, or salary." *Ex. 5 at 583.*

58. As discussed below, under applicable rules on how to adjudicate an EB-1(A) filing, the evidence on record is inherently sufficient to prove that Dr. Jafarov has sustained national or international acclaim and has risen to the very top of his field.

59. Defendants' denial is based on significant errors, namely misstating facts, ignoring expert reference letter evidence, and applying *ultra vires* rules, in both steps of the EB-1(A) analysis which lead to the incorrect decision on this petition.

### USCIS' Significant Errors in Step One: Regulatory Criteria Analysis

60. Though USCIS confirmed that Dr. Jafarov meets the minimum three (3) criteria as required under 8 CFR 204.5(h)(3), it erred in finding that Dr. Jafarov did not meet the additional three criteria mentioned above. Defendants' errors in its analysis of these additional criteria compound its errors in the final merits determination which lead to the egregious denial of the petition.

61. <u>Published Materials About Petitioner in Major Media</u>. Defendants incorrectly state that evidence of published material relating to Dr. Jafarov's work in his field failed to establish that these publications constitute "professional or major trade publications or other major media.". *Ex. 5 at 580.* However, in response to the RFE, Dr. Jafarov submitted evidence confirming that the evidenced publications which cover Dr. Jafarov's cutting-edge research unequivocally constitute <u>major</u>, <u>award-winning</u> national news outlets of national importance and reach in Azerbaijan, Dr. Jafarov's home country *Ex. 4 at 473-502.*

62. <u>Original Scientific and Scholarly Contributions</u>. Defendants assert that Dr. Jafarov failed to establish that his original scientific and scholarly contributions constituted a "contribution of major significance in the field.". *Ex. 5 at 582.* Dr. Jafarov provided various

support letters, authored by renowned experts in the field, that extensively elaborate on Dr. Jafarov's work and its significance in the field. For instance, Dr. Avrim Blum, Ph.D., Professor and Chief Academic Officer at the Toyota Technological Institute at Chicago, addressed the way that Dr. Jafarov's work has significantly advanced the field of computer science. *Ex. 4 at 532-534.* Defendants concede that Dr. Blum specifically speaks to Dr. Jafarov's expertise and outstanding contributions to the field. However, Defendants simultaneously assert that "the authors did not articulate how the petitioner's publications or findings have impacted the field". *Ex. 5 at 581.* Defendants clearly ignore the insight and opinion of distinguished experts in the field and draw their own conclusions contrary to the evidence established in the record. Additionally, Dr. Jafarov submitted evidence that his work was selected for presentation at conferences such as the *International Conference on Machine Learning*, a leading international conference on machine learning that features a remarkably selective process regarding the selection of research for presentation, and the *International Symposium of the Mathematical Foundation of Computer Science. Ex. 1 at 194-238.* The extensive evidence provided further includes a record proving that Dr. Jafarov's work has been cited frequently throughout the field in substantive work that would go on to be published in major conferences, and additional expert letters that precisely speak to the way in which Dr. Jafarov's work significantly advances the field.

63. <u>Nationally or Internationally Recognized Awards</u>. Defendants state that Dr. Jafarov failed to establish the national and international recognition of the awards that he has earned. *Ex. 5 at 583.* Dr. Jafarov was awarded two medals in subsequent years at the *Azerbaijan National Mathematical Olympiad,* the remarkably competitive Olympiad featuring only the most exceptional and talented participants from across the nation, and was awarded an

honorable mention at the *47th International Mathematical Olympiad*, considered to be one of the most prestigious mathematical competitions in the world which features participants from more than 100 countries across 5 continents. Dr. Jafarov produced evidence of their national and international acclaim and recognition, respectively, as well as the criteria for eligibility and earning such awards. *Ex. 4 at 568-575.* Defendants reason that these renowned competitions lack such recognition because competitor-invitees are students instead of established professionals. However, these competitions are nevertheless nationally and internationally recognized and represent the absolute top achievements among the eligible cohort – exceptionally talented students representative of the very top percentage of their peers. As such, awards for excellence at these competitions clearly merit national and international recognition and acclaim.

**USCIS' Significant Errors in Step Two: Final Merits Determination**

64. Defendants did not consider the totality of the evidence submitted for all criteria during the final merits determination and instead relied only on the three criteria they confirmed Dr. Jafarov meets. However, Defendants also significantly erred in the final merits determination independently of the regulatory criteria analysis as explained below.

65. Peer Reviews. Defendants misstated the number of peer reviews that Dr. Jafarov performed as part of his experience judging the work of others. Defendants falsely claim that Dr. Jafarov completed three such peer reviews. *Ex. 5 at 583.* In fact, Dr. Jafarov presented evidence with the initial petition which demonstrated that he completed 15 peer reviews across seven conferences and journals. *Ex. 1 at 305-335.* As part of the final merits determination, Defendants directly rely on this incorrect number, 3 versus 15, when

determining that "these few instances" of peer reviews did not establish that Dr. Jafarov is among the small percentage at the very top of his field. *Ex. 5 at 583.*

66. <u>Compensation</u>. Defendants falsely assert that Dr. Jafarov failed to provide comparative data establishing that his compensation indicates he is one of that small percentage that has risen to the very top of his field of endeavor. *Id.* Dr. Jafarov provided evidence in the initial petition and RFE Response, sufficient for Defendants to determine he met the criteria based on high salary or other significantly high remuneration for services, that establishes he would earn compensation in excess of the 90th percentile for professionals in his field in the United States. *Ex. 1 at 337-349; Ex. 4 at 504-523.* Providing data concerning percentiles is *per se* comparing Dr. Jafarov's compensation to that of other professionals in the field, as that is the sole purpose of dividing data into percentiles. Naturally, a professional that earns more than 90% of all other professionals in his field is considered to have risen to the top of his field. Therefore, Defendants' conclusion is simply false and, to the detriment of Dr. Jafarov, impermissibly poisons the final merits determination.

67. <u>Nationally or Internationally Recognized Awards.</u> As with the analysis under the regulatory criteria in Paragraph 63, Defendants discredit Dr. Jafarov's awards in the *Azerbaijan National Mathematical Olympiad* and the *47th International Mathematical Olympiad*, two medals and an honorable mention, respectively. Defendants assert that the record does not include evidence of the national or international recognition associated with these awards, therefore the receipt of such awards fails to establish that Dr. Jafarov is one of that small percentage who has risen to the very top of his field. *Ex. 5 at 583.* Dr. Jafarov presented the evidence Defendants allege does not exist in the RFE Response. *Ex. 4 at 568-575.* This evidence, which includes testimonials to which Defendants give no

deference, including the fact that the competitions are the "National" and "International" Olympiads, proves that these competitions are nationally and internationally recognized.

68. <u>Authored Publications</u>. Defendants falsely assert that Dr. Jafarov failed to demonstrate that his record of publications is consistent with having a career of acclaimed work and sustaining national and international acclaim, the significance of his authorship, or how his publications compare to others who are viewed to be at the very top of the field. *Ex. 5 at 583.* However, Defendants have completely ignored Dr. Jafarov's support letters stating that his publications have been selected for presentation at prestigious and leading international industry conferences with highly competitive selection processes against substantive publications of renowned experts, such as the *International Conference on Machine Learning* in both 2020 and 2021 and the *International Symposium of the Mathematical Foundation of Computer Science* in 2015. *Ex. 1 at 66-69, 78-80. 86-87, 98-99.* Defendants also failed to consider the weight of the citations to Dr. Jafarov's publications. As explained in Dr. Blums' support letter, the papers citing Dr. Jafarov's publications are themselves published in top machine learning and theoretical computer science conferences such as ICML 2021 and 2022, NeurIPS 2022, FOCS 2022, and ITCS 2022. *Ex. 4 at 532-534.* For Dr. Jafarov's publications to be selected to these conferences and be cited in works published in other leading conferences is undeniable evidence that Dr. Jafarov has both sustained international acclaim and risen to the top of his field.

**USCIS' Significant Errors: Ignorance of Evidence**

69. A fundamental defect with the denial stems from Defendants' treatment of support letters from distinguished experts in the field which evidence the fact that Dr. Jafarov meets all

six regulatory criteria and meets the criteria for a successful final merits determination

under the *Kazarian analysis. See* Paragraph 62.

70. The ignorance of probative evidence offered by distinguished experts violates internal

USCIS policies, guidelines, and case law as established by *Matter of Skirball Cultural*

*Center*:

> "In a case where the RFE cites no contradictory evidence in the record, nor
> offers any factual basis for challenging the credibility, expertise or
> knowledge on the part of the initial expert witnesses, the expert testimony
> evidence must be considered along with other evidence in the record."[8]

71. The denial decision offers no evidence that could negate the probative value and credibility

of the submitted expert letters. As such, it violates established practices.

## USCIS' Significant Errors: Application of Ultra Vires Rules

72. Another fundamental defect in the denial decision is that Defendants apply fictitious *ultra*

*vires* rules that ironically contradict their own adjudication guidelines and rules.

73. *See* paragraph 62. Defendants assert that the number of citations that Dr. Jafarov's work

has received is indicative of little attention in the field, thus concluding that Dr. Jafarov's

work cannot be considered of major significance. *Ex. 5 at 581.* Defendants attempts to

introduce an arbitrary metric – number of citations – which distinguishes major and non-

---

[8] *See also*: Failure to consider expert testimony and/or affidavits is a violation of due process. *Tun v. Gonzales*, 485
F.3d 1014 (8th Cir. 2007*); Rodriguez Galicia v. Gonzales*, 422 F.3d 529, 538–40 (7th Cir. 2005); *Lopez-Umanzor v.
Gonzales,* 405 F.3d 1049, 1056–58 (9th Cir. 2005); *McDonald v. Gonzales*, 400 F.3d 684,687–88 (9th Cir. 2005).
Unchallenged expert testimony cannot be rejected outright. *Banks v. Gonzales*, 453 F.3d 449, 453–54 (7th Cir.
2006). The determination of the credibility of documentary evidence should be the same as the determination of the
credibility of testimony and therefore, an adverse decision must be based on "specific, cogent reasons that bear
legitimate nexus to the finding." *Zahedi v. INS,* 222 F.3d 1157, 1165 (9th Cir. 2000).

major work. USCIS guidelines provide no such standard but highlight the consideration of

expert support letters to determine the significance of a petitioner's work.

74. *See* Paragraph 62. Defendants conclude that Dr. Jafarov has not established that the

publications about Dr. Jafarov which relate to his work are "major" publications because

he failed to provide "evidence regarding the target audience or the circulation details for

these publications". *Ex. 5 at 580.* However, such a requirement is not warranted by current

USCIS guidelines. In fact, the opposite is the case. Chapter 22.2 of the AFM reads:

> Remember also that you cannot predetermine the kind of evidence you think
> the alien should be able to submit, and deny the petition if that particular type
> of evidence (whether one of the types listed in 8 CFR 204.5(h)(3) or
> "comparable evidence" under 8 CFR 204.5(h)(4) is not there. *For example,
> you may think that if an alien is extraordinary, there should be published
> articles about the alien and his or her work. However, you cannot deny the
> petition because no published articles were submitted…<u>Approval or denial
> of a petition must be based on the type and quality of evidence that is
> submitted, not on evidence that you think should be there</u>.*

Thus, Defendants act *ultra vires* to the AFM. Dr. Jafarov supplied evidence that clearly

establishes the fact that the publications regarding him have been published by major,

award-winning national news outlets.

75. *See* Paragraph 65. Defendants conclude that Dr. Jafarov's peer review work does not

establish that he has risen to the top of his field because he did not submit evidence that

shows how his review experience compares to that of other professionals that have risen to

the top of their field. *Ex. 5 at 583.* Defendants act *ultra vires* in introducing this evidentiary

requirement which is beyond Defendants' authority. Dr. Jafarov's many instances of peer

review *per se* illustrate that he has risen to the top of his field, as reviewing the work of

others requires superior knowledge.

**<u>Evidence Provided Confirms that Dr. Jafarov Has Risen to the Top of His Field</u>**

76. The evidence provided within the I-140 Filing and supplemented through the RFE Response clearly demonstrates Dr. Jafarov has sustained national or international acclaim and has risen to the very top of his field.

77. Dr. Jafarov's pioneering work has cemented him at the pinnacle of his profession, as Dr. Jafarov's work has been prominently presented at world-leading scientific conferences such as the *International Conference on Machine Learning*. His work having been selected through a highly competitive selection process involving submissions from other renowned experts, as is the case with conferences of such international acclaim, clearly illustrates Dr. Jafarov's leading position in the field. *Ex. 1 at 123-238; Ex. 4 at 532-562.*

78. Dr. Jafarov has consistently demonstrated his ability to distinguish himself among his peers, as evidenced by the receipt of nationally and internationally recognized awards, including the two medals and an honorable mention from the *Azerbaijan National Mathematical Olympiad* and the *47th International Mathematical Olympiad*, respectively. *Ex. 4 at 564-575.*

79. Dr. Jafarov's high salary and other remuneration, above the 90th percentile of professionals in his field, are evidence that his total compensation indicates he is one of that small percentage that has risen to the very top of his field. *Ex. 4 at 504-529.*

80. Dr. Jafarov's original scientific and scholarly contributions related to correlation clustering have tangibly advanced and are of major significance to his field. *Ex. 1 at 104-239.* Top experts have spoken to Dr. Jafarov's impact on the field and the direct applicability his work has to current issues and shortcomings. *Ex. 4 at 532-534, 560.* Such groundbreaking findings, which address the shortcomings of methods used by other professionals in the

field, naturally elevates Dr. Jafarov to the top of his field, as he is advancing it in a way that others cannot.

81. Dr. Jafarov's pioneering work has garnered the attention of national news outlets of major importance. These news outlets have devoted several articles that exclusively report on Dr. Jafarov's work, some referring to him as the "Azerbaijani who managed to stand out among the best specialists in the USA". *Ex. 4 at 502-533.* Major news outlets focus on extraordinary individuals that will attract significant readership; therefore, they naturally select individuals that have distinguished themselves. *Id.* Exclusive articles on Dr. Jafarov's work clearly illustrate Dr. Jafarov's reputation in the field. Dr. Jafarov is not the subject of a footnote but of the entire article, thereby clearly illustrating his leading position in the field.

82. Dr. Jafarov has been asked to judge the work of others on various occasions, including peer reviews of publications in prestigious journals in his area of expertise such as the renowned *SIAM Journal on Computing* and the *Journal of Intelligent & Fuzzy Systems. Ex. 1 at 305-335.* Similarly, Dr. Jafarov has been invited to judge his peers' work at prominent industry conferences such as the AISS, ITCS, and the AISTATS. *Id.* Between these prestigious journals and renowned conferences, Dr. Jafarov has conducted fifteen independent peer reviews. Considering that Dr. Jafarov has routinely been asked to judge the work of renowned and respected professionals in the field, there is no debate that Dr. Jafarov is at the very top of his field.

## VII.  **<u>INJURY</u>**

83. Defendants' wrongful denial of the I-140 petition poses risks for Plaintiff to lose his employment in the United States and the livelihood he has established for himself, as he may need to leave the United States if he is not able to obtain permanent residence.

84. Defendants' wrongful denial of the I-140 deprives Plaintiff of his ability to further conduct pioneering research in the United States while simultaneously depriving the United States and its citizens of a distinguished expert in computer science and applied mathematics, thus tangibly interfering with the United States' interest to attract those who have risen to the top of their field.

## VIII.   EAJA FEES

85. In connection with the claim for attorneys' fees and costs, under the Equal Access to Justice Act, 28 U.S.C. § 2412, Plaintiff seeks to recover costs and attorneys' fees incurred in bringing this action. Plaintiff is obligated to pay reasonable attorneys' fees and costs incurred in the prosecution of this cause.

## IX.   CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

86. Plaintiffs hereby incorporate by reference as set forth in full and at length herein paragraphs 1 through 85 of this Complaint.

87. The denial of the I-140 petition is an agency action under the Administrative Procedure Act ("APA").

88. The denial of the I-140 petition is improper and reviewable under 5 U.S.C. § 702.

89. As a result of this improper decision by Defendants, Plaintiff is "suffering legal wrong because of agency action" and is "adversely affected or aggrieved by agency action," and therefore entitled to judicial review thereof" under 5 U.S.C. § 702.

90. The APA directs that the "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

91. Defendants' decision to deny Plaintiffs' I-140 petition in light of a record of substantial evidence of EB-1A eligibility is "arbitrary, capricious, an abuse of discretion, [and] otherwise not in accordance with law" and should be "held unlawful and set aside" under 5 U.S.C. § 706(2)(A) and (D).

92. Defendants' denial of Plaintiffs' I-140 petition violates the INA and the APA because, contrary to the INA and USCIS regulations, Defendants impermissibly determined that:

> *The petitioner has not established that he has garnered wide attention from the field based on his work of peer reviews, published scholarly articles, or salary. The record as a whole, including the evidence discussed above, does not establish the petitioner's eligibility for the benefit sought.*

93. The decision denying the I-140 petition is not supported by substantial evidence. The denial does not properly consider the evidence on record.

94. Defendants failed to consider evidence presented to them, including expert reference letters from leading professionals in the field who also provided separate evidence of how Dr. Jafarov's research and algorithms have tangibly advanced the field of computer science and applied mathematics.

95. Defendants misconstrued their own regulations and guidance and created requirements that do not exist in the regulations or statute.

96. Defendants' multiple mischaracterizations of the record, many of which were repeated in the Denial; Defendants' repeated reliance on an incorrect legal standard and nonexistent requirements; and Defendants failed to give adequate consideration to the matters before them, and that their decision is based on something other than the facts or the law.

97. Defendants' factual findings are clearly erroneous and not supported by the record, including, but not limited to, their findings that:

⇒ Defendants falsely state that Plaintiff only conducted three peer reviews which in fact he submitted evidence of fifteen completed peer reviews over seven conferences and journals.

⇒ Defendants falsely state that Plaintiff failed to provide sufficient evidence to establish the national and international recognition associated with the prizes and awards that Plaintiff received.

⇒ Defendants falsely assert that the record fails to establish that the publications about Plaintiff related to his work constitute "professional or major trade publications or other major media.".

⇒ Defendants falsely assert that Plaintiff's failed to establish that his original scientific and scholarly contributions constitute "contributions of major significance in the field."

⇒ Defendants falsely assert that Plaintiff failed to establish how his renumeration compares to that of others in the field.

## SECOND CAUSE OF ACTION

98. Plaintiff hereby incorporates by reference as set forth in full and at length herein paragraphs 1 through 85 of this Complaint.

99. Defendants' conclusion that Plaintiff's work is not significant in the field, based on the specific number of citations that it has received, seeks to impermissibly create an arbitrary standard of specific citations that a petitioner's work must have received in order to be considered major and significant. The submitted expert letters and evidence of presentations at major international industry conferences clearly establish that Plaintiff's work is considered major and significant. Thus, Defendants conduct is *ultra vires* the INA and regulations, as Defendants lack the authority to create such new substantive requirements absent legislation or notice and comment rulemaking.

100. Defendants act ultra vires the INA and regulations by asserting that Plaintiff failed to establish the "major" character of the news outlets that have extensively covered him by not providing evidence pertaining to the target audience. It is clearly established in USCIS regulations that an officer cannot demand evidence that he or she thinks "should be" in the record. Defendants' denial must be overturned as Defendants lack the authority to create such new substantive requirements absent legislation or notice and comment rulemaking.

101. Defendants act *ultra vires* their own regulations by concluding that Plaintiff failed to establish that he has risen to the top of his field because he did not provide an analysis comparing his peer review experience to that of others at the very top of the field. Therefore, Defendants' denial must be overturned as Defendants lack the authority to do so absent legislation or notice and comment rulemaking.

## X.    RELIEF REQUESTED

102.    WHEREFORE, Plaintiffs respectfully request this Court enter judgment on their behalf and issue the following:

a.  An order declaring that Defendants' denial of Plaintiffs' I-140 petition is violative of the INA and its attendant regulations; violative of the Administrative Procedure Act; *ultra vires*; erroneous as a matter of law and fact; arbitrary and capricious, an abuse of discretion and not otherwise in accordance with law; and violative of due process;

b.  An order directing Defendants and their agents to issue immediately all necessary and appropriate documents to Plaintiff to evidence the approval of its I-140 petition.

c.  An order directing Defendants and their agents to withdraw the denials of, and to approve Plaintiffs' I-140 petition;

d.  An order awarding Plaintiffs their attorneys' fees and costs; and

e.  An order granting such other relief as the Court may deem just, equitable and proper.

Dated: New York, NY

April 21, 2023                                        Respectfully Submitted,

<u>*/s/ Adrian M. Pandev*</u>
Adrian M. Pandev
Counsel for Plaintiff
Pandev Law, LLC
One World Trade Center
Suite 8500
New York, NY 10007
adrian@pandevlaw.com
(646) 354-3780

**List of Exhibits in Support of the foregoing Complaint**

**Jafar Jafarov v. Alejandro Mayorkas, et al**


Exhibit 1        Jafarov, Jafar – EB-1A I-140 Petition

Exhibit 2        Jafarov, Jafar – EB-1A I-140 Receipt Notice

Exhibit 3        Jafarov, Jafar – EB-1A I-140 Request for Evidence

Exhibit 4        Jafarov, Jafar – EB-1A I-140 Response to Request for Evidence

Exhibit 5        Jafarov, Jafar – EB-1A I-140 Decision