UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DR. JAFAR JAFAROV,

                                          Plaintiff,

                    -v-

UNITED STATES CITIZENSHIP AND IMMIGRATION
SERVICES, *et al.*,

                                          Defendants.

23 Civ. 3372 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Plaintiff Dr. Jafar Jafarov brings this action against the United States Citizenship and

Immigration Services ("USCIS") and related federal officials (collectively, "the Government")

seeking review of USCIS's decision to deny Jafarov an "extraordinary ability" visa.  Before the

Court are the parties' competing motions for summary judgment.  For the reasons below, the

Court denies Jafarov's motion and grants the Government's cross-motion.

I.      **Background**[1]

A.      **The "Extraordinary Ability" Visa**

In the Immigration Act of 1990, Pub. L. 101-649, Congress created five "preference"

categories for employment-based visas.  8 U.S.C. § 1153(b).  "First preference" visas carry

several advantages.  Recipients need not have an actual offer of employment before arriving in

the United States.  8 C.F.R. § 204.5(h)(5).  Nor must recipients go through the "time-consuming

labor certification process" familiar to other visa applicants.  *Kazarian v. U.S. Citizenship &*

*Immigr. Servs.*, 596 F.3d 1115, 1120 (9th Cir. 2010).  And because there is little backlog for such

---

[1] The facts which form the basis of this decision are taken from the administrative record of the
proceedings below.  Dkt. 25 ("AR").

visas, first preference visa recipients are able to "avoid the years-long waiting periods that apply to most other employment-based immigration categories."  *Amin v. Mayorkas*, 24 F.4th 383, 386 (5th Cir. 2022); *see also* Peter C. Fulweiler, Jr., *The Cascade Effect: The Consequences of the USCIS's Interpretation of* Kazarian v. USCIS *on Economic Growth*, 26 GEO. IMMIGR. L.J. 603, 607–10 (2012).  Unsurprisingly, first preference visas are highly sought after by eligible and ineligible noncitizens alike.

One type of first preference visa is for noncitizens of "extraordinary ability," "colloquially dubbed as the 'Einstein' or 'genius' visa."  *Amin*, 24 F.4th at 386.  A noncitizen seeking to obtain such a visa bears the burden of demonstrating three criteria:

> (i) the alien has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation;
>
> (ii) the alien seeks to enter the United States to continue work in the area of extraordinary ability; and
>
> (iii) the alien's entry into the United States will substantially benefit prospectively the United States.

8 U.S.C. § 1153(b)(1)(A)(i)–(iii).[2]  "[E]xtraordinary ability" entails "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor."  8 C.F.R. § 204.5(h)(2).

USCIS adjudicates applications for such visas through a two-step process.  *See* U.S. CITIZENSHIP & IMMIGR. SERVS., POLICY MANUAL vol. 6, pt. F, ch. 2 (2023) [hereinafter, "POLICY MANUAL"]; *see also Amin*, 24 F.4th at 388–89.  At the first step, an applicant must provide

---

[2] This decision, following the Supreme Court's lead, uses the term "noncitizen" as equivalent to the statutory term "alien."  *See, e.g.*, *Nasrallah v. Barr*, 140 S. Ct. 1683, 1689 n.2 (2020).

"initial evidence" of either (1) a major "one-time achievement," like a Nobel Prize, or (2) at least three of the following criteria:

> (i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;
>
> (ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;
>
> (iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;
>
> (iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;
>
> (v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;
>
> (vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;
>
> (vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;
>
> (viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;
>
> (ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or
>
> (x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

8 C.F.R. § 204.5(h)(3)(i)–(x).  At the second step, USCIS conducts a "final merits determination" to determine whether the noncitizen has demonstrated, by a preponderance of the evidence, that he is "one of that small percentage who have risen to the very top of the field of endeavor" and received "sustained" national or international acclaim.  POLICY MANUAL, vol. 6,

3

pt. F, ch. 2 at B; *see also* 8 C.F.R. § 204.5(h)(2).  This inquiry involves a qualitative, all-things-considered evaluation of the noncitizen's achievements, focused on whether he meets the "high level of expertise for the [extraordinary ability] immigrant classification."  POLICY MANUAL, vol. 6, pt. F, ch. 2 at B.

### B.    Jafarov's Petition

On November 21, 2022, Dr. Jafar Jafarov, a citizen of Azerbaijan, petitioned USCIS for an extraordinary ability visa.  AR 217–27.  Three months before, in August 2022, Jafarov, then on a student visa, had graduated from the University of Chicago with a doctoral degree in Computer Science.  AR 252 (diploma).  He remained in the United States, pursuant to post-graduation work authorization, as a research scientist with Meta Platforms, Inc. (the parent company of Facebook and Instagram).  AR 234, 236, 250.

Jafarov's petition asserted that he was a person of extraordinary ability in the field of computer science and applied mathematics—in particular, in the subspeciality of machine learning.[3]  AR 217.  His petition argued that he met six of the 10 criteria listed in § 204.5(h)(3).[4]  Specifically, Jafarov put forward what he argued was evidence of "nationally or internationally recognized prizes or awards for excellence in the field of endeavor," § 204.5(h)(3)(i); "[p]ublished material about [his work] in professional or major trade publications," § 204.5(h)(3)(iii); "participation . . . as a judge of the work of others" in the field,

---

[3] Machine learning is a branch of artificial intelligence that focuses on teaching computers how to learn patterns and make decisions or predictions.  It involves developing algorithms and models that enable computers to analyze data, recognize patterns, and improve their performance over time through experience.  *See generally* T.C., *How Machine Learning Works*, THE ECONOMIST (May 14, 2015), https://www.economist.com/the-economist-explains/2015/05/13/how-machine-learning-works.

[4] Jafarov did not claim then (and does not claim now) a major "one-time achievement" that alternatively could support his petition at the first step.

§ 204.5(h)(3)(iv); "original scientific . . . contributions of major significance in the field,"

§ 204.5(h)(3)(v); "authorship of scholarly articles in the field," § 204.5(h)(3)(vi); and

"significantly high remuneration for services[] in relation to others in the field,"

§ 204.5(h)(3)(ix).  AR 219–25.

On November 29, 2022, USCIS issued a Request for Evidence ("RFE") that set out its

preliminary view of Jafarov's application.  AR 17–25.  The RFE stated that Jafarov satisfied two

of the § 204.5(h) criteria:  He "participat[ed] . . . as a judge of the work of others."  AR 21.  And

he authored "scholarly articles in the field."  AR 22.  But, it concluded, he failed the other four:

He had not shown that "the prizes or awards" he received "were given for excellence" in his

"field of endeavor" as opposed to more "local or regional" accolades.  AR 19–20.  He had not

shown that the "published materials" discussing his work featured in "professional or major trade

publications" with either a "significant national distribution" or special importance in the field.

AR 20–21.  He had not shown how his scholarship had been of "major significance in the field,

rather than [having] prospective, potential impacts."  AR 21–23.  And he had not shown that his

salary ($168,000 and a $75,000 signing bonus) was "high relative to others working in the field."

AR 23–24.  In response, Jafarov submitted further evidence in support of his application, which

USCIS received on January 23, 2023.  AR 2.

On February 3, 2023, USCIS denied Jafarov's petition.  AR 1.  It found he satisfied three

of the § 204.5(h) criteria, and thus cleared the first regulatory step:  He "participat[ed] . . . as a

judge of the work of others."  AR 3.  He authored "scholarly articles in the field."  AR 3.  And,

in light of the new evidence Jafarov had provided, he "commanded a high salary . . . in relation

to others in the field."  AR 3.  USCIS found, however, that he still failed the other three criteria

he claimed to meet:  First, his various awards (bronze medals at the Azerbaijani National Science

Olympiads in 2005 and 2006, and an honorable mention at the International Mathematical Olympiad in 2006) were received in "limited competitions which exclude thousands of practiced and distinguished persons who have tenured and more celebrated careers." AR 3–4. "[S]uch honors," USCIS stated, "are not considered to be nationally or internationally recognized prizes . . . for excellence in the field of endeavor." AR 4. Second, despite having proffered "published material" about his work, Jafarov failed to submit evidence of the relevant publications' "target audience or circulation details." AR 4. As such, he failed to "establish[] that they are professional or major trade publications." AR 4. Third, although Jafarov's work "shows promise," he had not established, given the few citations he had received thus far, that "his work already qualifies as a contribution of major significance in the field." AR 5–6.

As his petition satisfied three § 204.5(h) criteria, his petition proceeded to the second step—that is, the "final merits determination." AR 7. At this step, USCIS found against Jafarov. It determined that the "record as a whole . . . does not establish [Jafarov's] eligibility for the benefit sought." AR 7. In its view, Jafarov had "not established that he has garnered wide attention from the field," or that he had received awards indicating that he "is one of that small percentage who has risen to the very top of their field." AR 7. As a result, it denied his petition. AR 7.

### C.    Procedural History

On April 21, 2023, Jafarov brought this lawsuit under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, and the federal declaratory judgment statute, 28 U.S.C. § 2201. Dkt. 1. He sought declaratory relief and an order directing the defendants to grant him an extraordinary ability visa. On August 18, 2023, Jafarov moved for summary judgment based on the administrative record, Dkt. 26, and filed a memorandum of law in support, Dkt. 27 ("Pl.

Br.").  On September 8, 2023, the Government cross-moved for summary judgment, Dkt. 29, and

filed a memorandum of law in support of its motion and in opposition to Jafarov's, Dkt. 30

("Def. Br.").  On September 22, 2023, Jafarov filed a reply.  Dkt. 30 ("Pl. Reply Br.").  On

October 6, 2023, the Government filed a reply.  Dkt. 31 ("Def. Reply Br.").

## II.    Legal Standard

### A.    Summary Judgment

Summary judgment is appropriate when the pleadings and the evidence demonstrate that

"there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  In a case involving review of a final agency action under

the APA, however, "the usual Rule 56 summary judgment standard 'does not apply.'"  *New York

v. U.S. Dep't of Health & Hum. Servs.*, 414 F. Supp. 3d 475, 516 (S.D.N.Y. 2019) (quoting *Ass'n

of Proprietary Colls. v. Duncan*, 107 F. Supp. 3d 332, 344 (S.D.N.Y. 2015)).  Instead, "'the

district judge sits as an appellate tribunal,' and '[t]he entire case on review is a question of law.'"

*Koopmann v. U.S. Dep't of Transp.*, 335 F. Supp. 3d 556, 560 (S.D.N.Y. 2018) (quoting *Am.

Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)).  As such, the role of the

Court is not to determine whether there are genuine disputes of material fact, but to "decid[e], as

a matter of law, whether the agency action is . . . consistent with the APA standard of review."

*Fisher v. Pension Guard. Corp.*, 468 F. Supp. 3d 7, 18 (D.D.C. 2020).

### B.    Arbitrary and Capricious Review

Under the APA, "courts review agency actions under a deferential standard, under which

such actions may only be disturbed if they are 'arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law,' or 'unsupported by substantial evidence.'"  *Noroozi v.

Napolitano*, 905 F. Supp. 2d 535, 541 (S.D.N.Y. 2012) (quoting 5 U.S.C. § 706(2)(A), (E)); *see

*also Int'l Internship Programs v. Napolitano*, 853 F. Supp. 2d 86, 96 (D.D.C. 2012) ("Review of final agency action under the APA is highly deferential.").

"An agency [action] may be deemed arbitrary, capricious or an abuse of discretion 'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Henley v. Food & Drug Admin.*, 77 F.3d 616, 620 (2d Cir. 1996) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "In other words, so long as the agency examines the relevant data and has set out a satisfactory explanation including a rational connection between the facts found and the choice made, a reviewing court will uphold the agency action, even a decision that is not perfectly clear, provided the agency's path to its conclusion may reasonably be discerned." *Town of Southold v. Wheeler*, 48 F.4th 67, 77 (2d Cir. 2022) (cleaned up), *cert. denied sub nom. Town of Southold v. Rosado*, 143 S. Ct. 1755 (2023). An agency's decision must, in sum, be "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021).

When a court reviews USCIS's decision to deny a noncitizen's petition, the scope of its review is accordingly limited. In evaluating "the factual basis for an agency's conclusion," the arbitrary and capricious standard "is functionally the same as the 'substantial evidence' test used to evaluate formal agency action under 5 U.S.C. § 706(2)(E)." *Amin*, 24 F.4th at 393. Put another way, "[w]hen the arbitrary or capricious standard is performing that function of assuring factual support, there is no substantive difference between what it requires and what would be required by the substantial evidence test, since it is impossible to conceive of a 'nonarbitrary'

factual judgment supported only by evidence that is not substantial in the APA sense." *Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 683–84 (D.C. Cir. 1984) (Scalia, J.). Accordingly, "[u]nless the [C]ourt can conclude that no rational adjudicator" would have denied Jafarov's petition, "it must not disturb the agency's decision." *Visinscaia v. Beers*, 4 F. Supp. 3d 126, 133 (D.D.C. 2013); *see also Cuckic v. Jaddou*, No. 21 Civ. 8395 (JPO), 2023 WL 2586031, at *4 (S.D.N.Y. Mar. 21, 2023).

## III. Discussion

Jafarov makes two arguments. First, he argues, USCIS erred in finding he met only three of the § 204.5(h) criteria. Pl. Br. at 20–25. Second, he argues, USCIS's decisive second-step merits determination lacked support in the record, as its review wrongly minimized the quality of the evidence he produced and misstated that evidence. Pl. Br. at 25–30. The Court considers these arguments in turn.

### A. First-Step Criteria

#### 1. § 204.5(h)(i): "Receipt of lesser nationally or internationally recognized . . . awards for excellence in the field of endeavor"

Jafarov first challenges USCIS's assessment of awards he received as a high school student. In his petition, Jafarov presented evidence that he had won three relevant awards. On two consecutive occasions, in 2005 and 2006, he received a bronze medal at Azerbaijan's National Science Olympiad. And in 2006, he received an honorable mention at the International Mathematical Olympiad.

USCIS determined that such achievements do not qualify as "lesser nationally or internationally recognized . . . awards for excellence in [his] field of endeavor." AR 3–4. "In these competitions," USCIS explained, "students are faced with unusually complex mathematical problems, and receiving an award is a tremendous honor to those students, but they are limited

competitions which exclude thousands of practiced and distinguished persons who have tenured

and more celebrated careers."  AR 4.  Because such awards "are given to students in the field and

inherently exclude established professionals," USCIS found Jafarov had not produced evidence

to satisfy the criterion.  AR 4.

Jafarov argues that USCIS erred.  "[J]ust because these prestigious national and

international Olympiads are limited to students," he states, that does not mean "their prizes or

awards cannot be nationally or internationally recognized for excellence in the field of

endeavor."  Pl. Br. at 21.  He argues that *Eguchi v. Kelly*, No. 16 Civ. 1286 (SAF), 2017 WL

2902667 (N.D. Tex. July 7, 2017) illustrates the point.  There, USCIS had determined that the

award on which the petitioner relied ("Rookie of the Year" amongst professional Brazilian bull

riders) was "by its very nature . . . limited to neophytes, excluding more experienced bull riders,"

and thus could not "show [his] extraordinary ability under this criterion."  *Id.* at *3.  But the

district court found that analysis arbitrary and capricious.  In its view, USCIS's reasoning

"impermissibly conflate[d]" the first- and second-step inquiries.  At the first step, the agency

may only consider whether the petitioner submitted "documentation of his receipt" of a "lesser

nationally or internationally recognized prize or award."  *Id.* at *4.  Only at the second step may

it consider whether such awards prove the applicant had reached the "very top of his field of

endeavor."  *Id.*  Similarly here, Jafarov argues, USCIS erred in setting a "heightened

requirement" for such awards at the first step.  Pl. Br. at 21.

The Court cannot find USCIS's judgment to have been in error, let alone arbitrary,

capricious, or an abuse of discretion.  The national awards Jafarov received, though impressive,

were not "for excellence in [his] field of endeavor."  8 C.F.R. § 204.5(h).  They were for his

participation in high school tournaments, in which he competed against other high school

students.  The Azerbaijani National Science Olympiad, for instance, is designed to "reveal students with special talents in different subjects, to assess their knowledge and skills, [and] to increase students' interest in these subjects among students of 9–11 grades of general education establishments."  AR 171 (translation of documented provided by Azerbaijan's Institute of Education).  It was not irrational for USCIS to deem a bronze medal in such a competition, while a "tremendous honor" for an individual student, one awarded in too narrow a field to constitute a recognition of Jafarov's excellence.  *See, e.g.*, *Sarin v. U.S. Citizenship & Immigr. Servs.*, No. 22 Civ. 7498 (SVW), 2023 WL 5667531, at *10 (C.D. Cal. July 27, 2023) (rejecting, at first step, the applicability of an award limited to the "subset of actors" who worked for Sony Entertainment); *Gu v. Mayorkas*, No. 19 Civ. 2496 (TSC), 2022 WL 4464904, at *7 (D.D.C. Sept. 26, 2022) (same for an award limited to models recruited from "university campuses throughout China"); *Hristov v. Roark*, No. 09 Civ. 2731 (SLT), 2011 WL 4711885, at * 8 (E.D.N.Y. Sept. 30, 2011) (same for an award limited to subset of acting students).  That Jafarov was among "the best mathematically gifted students in the country," AR 166 (declaration of coach for Azerbaijan's team at International Mathematics Olympiad), does not show that he had received awards for "excellence," rather than mere promise, in the field.

The same assessment holds for Jafarov's honorable mention at the International Mathematics Olympiad, in which he competed against a global field.  Here, too, Jafarov's competitors were high school students.  But even assuming *arguendo* that the wider field—some of the world's most talented young mathematicians—would make an award here one "for excellence in the field of endeavor," 8 C.F.R. § 204.5(h), it was not irrational for USCIS to determine that Jafarov's honorable mention did not amount to such an award.  As USCIS noted in its denial, one-half of competitors at the Olympiad receive a medal (either gold, silver, or

bronze), while those who miss medals "but solve at least one problem correctly receive [an] honorable mention."  AR 3; *see also* AR 177.  Given that the text of the regulation "specifies that the awards must be 'for excellence in the field of endeavor,'" it was reasonable for USCIS "to require evidence that the [proffered] award is merit-based," rather than one recognizing "mere participation."  *Krasniqi v. Dibbins*, 558 F. Supp. 3d 168, 182 (D.N.J. 2021).  It was well within USCIS's discretion to deem an honorable mention received by only the bottom half of high school students at the Olympiad—talented though those students may be—more akin to a participation trophy than a recognition of individual excellence.

*Eguchi*, which the Court assumes for purposes of this decision to have been rightly decided, is not to the contrary.  The award at issue there differed in several relevant respects to the awards at issue here.  Most significantly, the award in *Eguchi* ("Rookie of the Year") compared the petitioner's performance to the performance of other *professionals* in the field of bull riding (albeit relative novices).  2017 WL 2902667, at *3.  Here, by contrast, Jafarov's awards were all attained in competitions run for amateurs—high school students at the start of their intellectual journey in mathematics.  *See* AR 3–4.  Moreover, in *Eguchi*, even the Government conceded that USCIS's "inartfully worded" reasoning "conflate[d] . . . steps one and two" by requiring that an award "show [the petitioner's] extraordinary ability," rather than merely evidence his acclaim in the field.  2017 WK 2902667, *3.  Here, to the contrary, USCIS's reasoning was directed to the criterion's requirement that the prize recognize "excellence in the field of endeavor."  AR 3–4.  As USCIS's Policy Manual recognizes, "[t]he criteria used to grant the awards or prizes," "[t]he number of awardees or prize recipients," and any "[l]imitations on competitors" are factors to consider in assessing whether an award has is sufficiently keyed to "excellence in the field" to qualify under the criterion.  POLICY MANUAL, vol. 6, pt. F, ch. 2 at

B.1.  Those factors led USCIS reasonably to conclude that Jafarov's awards do not meet the first-step threshold; at no point did the agency consider second-step questions under the guise of a first-step analysis.  USCIS's evaluation of Jafarov is thus consistent with the analysis in *Eguchi*.

> **2.    § 204.5(h)(iii): "Published material about the alien in . . . major media"**

Jafarov next challenges USCIS's assessment of published work about his career.  In his response to USCIS's RFE, Jafarov submitted five newspaper articles, all in Azerbaijani (with certified English translations).  AR 34–104.  Each discusses his work through a different lens.  In one, he offers "advice to teenagers interested in technology."  AR 36 (*Sherg*).  In two others, he discusses his "love for mathematics."  AR 45 (*Kaspi*), AR 71 (*Modern.az*).  In a fourth, he discusses his journey from Azerbaijan to the United States.  AR 51 (*Iki Sahil*).  In the last, he reveals "the secret of [his] successes" (being "goal-oriented and work[ing] hard").  AR 60–61 (*525.az*).

USCIS determined that Jafarov had failed to adduce evidence sufficient to satisfy the criterion of "[p]ublished material" about his work "in . . . major media."  AR 12.  "While these articles are about the petitioner and his work in the field," USCIS explained, "the petitioner has not established that they are . . . major media."  AR 12.  Without "evidence regarding the target audience or circulation details for these publications," USCIS could not find that the relevant materials had featured in qualifying publications.  AR 12.

Jafarov argues that USCIS "misstat[ed] the record" in various respects.  Pl. Br. at 22.  First, in its initial list, USCIS omitted one of the five articles (the one published in the newspaper *Sherg*).  This error, in Jafarov's view, indicates that USCIS failed even to consider it in its analysis.  *Id.*  Second, he argues, he submitted additional evidence that "clearly describes the circulation frequency and the audience" of the publications.  *Id.*  He argues that the evidence he

provided about the awards several of the publications (and their relevant authors) have received "establish" their status as "major national media." *Id.*

The Court again cannot find USCIS's judgment to have been in error.  That USCIS omitted one article from its initial bulleted list does not indicate that USCIS did not consider the article in reviewing Jafarov's petition.  To the contrary, its decision letter expressly discusses *Sherg*.  AR 4 ("The response included copies of the articles with English translations . . . including information pertaining to . . . Sherg.az . . . .").  The mere fact that USCIS inadvertently failed to include the article in its top-line summary of Jafarov's evidence is, at worst, a harmless error, if it is an error at all.  Such an oversight "clearly had no bearing on the procedure used or the substance of decision reached."  *Kazarian*, 596 F.3d at 1119 (emphasis omitted).

The real issue—on which the parties rightly focus—is whether Jafarov submitted sufficient evidence to prove the relevant publications' stature, as the regulations require.  He did not.  As USCIS explained, Jafarov did not supply evidence of the actual *circulation* or *readership* of the newspapers in which he featured, as the agency had requested.  AR 4.  Instead, he provided evidence only of the *frequency* of their circulation, with conclusory claims about their national importance.  *See, e.g.*, AR 75 (offering no details of *Kaspi*'s circulation or readership but claiming that it is "celebrated on a national scale," "one of the few newspapers of Azerbaijan" that has "all of its pages . . . printed in four colors," and that it "published over 10 thousand prints" between 1887 and 1919); AR 78 (offering no details of *525th Newspaper*'s circulation or readership but noting it is "released five times a week"); AR 81 (offering no details of *modern.az*'s circulation or readership); AR 84 (offering no details of *Sherg*'s circulation or readership but asserting that it is a "popular influential socio-political newspaper capable of impacting public opinion").  Mere assertion of a publication's national importance is insufficient

without at least some objective evidence to support that claim.  *See, e.g.*, *Mussarova v. Garland*, 562 F. Supp. 3d 837, 847 (C.D. Cal. 2022); *Onaghise v. U.S. Dep't of Homeland Sec.*, No. 20 Civ. 3033 (BS), 2022 WL 4073344, at *4 (N.D. Tex. Sept. 2, 2022); *IK Sch. of Gymnastics v. Nielson*, No. 17 Civ. 2822 (TNM), 2018 WL 5312190, at *5 (D.D.C. Oct. 10, 2018).  USCIS did not err—let alone act irrationally—in so finding here.

Nor did USCIS err in finding the evidence Jafarov adduced of the journalists' awards similarly inadequate in proving the publications' status.  To be sure, the journalists who interviewed Jafarov have received impressive accolades.  AR 101–103 (listing awards given by Azerbaijan's Media Development Agency for, *inter alia*, "best socio-political analysis," "best cultural material," "best journalistic investigation," and "best interview").  But USCIS took account of these awards in its decision letter.  AR 12.  It was not unreasonable for USCIS to find that more was required—specifically, some evidence of the publications' *actual* distribution within Azerbaijan—to establish that Jafarov had featured in "major media."  The national import of these the publications (and of the awards is journalists have received) is not "self-evident" in contrast to those in *Zizi v. Cuccinelli*, No. 20 Civ. 7856 (SVK), 2021 WL 2826713, at *6 (N.D. Cal. July 7, 2021), on which Jafarov relies.  There is no basis to disturb USCIS's conclusion as to this criterion.

### 3.    § 204.5(h)(v): "Original scientific . . . contributions of major significance in the field"

Jafarov next disputes USCIS's assessment of his published work.  In his petition, and in his response to USCIS's RFE, Jafarov submitted statements from academics attesting to "his

innovative contributions to the field," AR 136, and his Google Scholar profile, which listed the 19 citations his work had thus far received, AR 154.[5]

USCIS determined that although Jafarov's work "shows promise," he had not established that it "already qualifies" as having "major significance in the field, rather than prospective, potential impacts."  AR 5.  In USCIS's assessment, "[t]he letters . . . from the petitioner's colleagues[] primarily contain broad attestations of the significance of the petitioner's research studies without providing specific examples of original contributions that rise to a level consistent with major significance."  AR 5.  And "[r]epeating the language of the statute or regulations," USCIS stated, "does not satisfy the petitioner's burden of proof."  AR 5.  As to his citation count, USCIS concluded that the 19 citations (12 of which were for one article) indicates that his work has received relatively "little attention from the field."  AR 5.

Jafarov argues that USCIS's review "focused on the significance of individual components of [his] submission, rather than considering [his petition] as a whole."  Pl. Br. at 24.  The record, he contends, "clearly reflects that [he] has multiple, original contributions of major significance to the field of computer science and applied mathematics."  *Id.*  To determine otherwise, he argues, was "plainly contrary to the evidence submitted."  *Id.*

The Court again cannot conclude that USCIS's assessment was irrational or baseless.  As the Government notes, Jafarov effectively asks the Court to reweigh the evidence.  But weighing the evidence is a job for the agency, not the Court.  *Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 342 (2d Cir. 2006).  USCIS's decision carefully and individually considered each

---

[5] Jafarov stated in his response to USCIS's RFE that he had received 30 citations, AR 29, as his Google Scholar profile shows, AR 154.  He appears, however, to concede that the relevant number of citations for purposes of this case is 19—the number he had received at the time he filed his petition.  *See, e.g.*, Pl. Br. at 23.

testimonial Jafarov submitted, and thoroughly catalogued the articles Jafarov had published and

citations each had received.  AR 6–7.  These testimonials, as USCIS reasoned, mostly consist of

conclusory statements about the significance of his work and his potential.  *See, e.g.*, AR 136

(Blum: Jafarov has "limitless potential to continue advancing the field as he continues in his

promising career"); AR 281 (Makarychev: Jafarov "has the necessary skills and capabilities to

make outstanding contributions to machine learning, algorithms, and optimization"); AR 293

(Garyev: Jafarov has the "unique potential to make impactful contributions to the field").  That

Jafarov may disagree—or that another rational decisionmaker may have determined that he did

satisfy this criterion—does not provide a basis for the Court to overturn USCIS's reasoned

determination to the contrary.

     In particular, the Court does not find any defect in USCIS's discussion of Jafarov's

citation record.  Jafarov claims that USCIS "improperly limited its consideration of Dr. Jafarov's

citation record to the number of citations, . . . instead of considering the submission as a whole."

Pl. Reply Br. at 10.  But Jafarov does not support that proposition, and a review of USCIS's

decision letter reveals the contrary: USCIS considered both "the evidence consisting of the

citations" and Jafarov's "conference presentations[] and the reference letters from other experts."

AR 6.  For this reason, *Chursov v. Miller*, No. 18 Civ. 2886 (PKC), 2019 WL 2085199

(S.D.N.Y. May 3, 2019), on which Jafarov relies, is inapposite.  There, USCIS failed to

"adequately explain[]" its conclusion, and all but ignored key testimonials from experts that the

petitioner's work "yielded results of significant impact for the rational drug design against

various viral and bacterial infections," "extended the frontier of transcriptome analysis," and

"helped to solve a long-standing conundrum . . . [t]hat is a significant practical contribution to

the field."  *Id.* at *4–5.  Here, however, as noted, Jafarov's testimonials spoke largely in

generalities, and did not evidence the tangible impact of his work in the field.  *See, e.g.*, AR 136 (explaining that Jafarov's algorithms are "efficient" and "give provably better results" than prior attempts but not elaborating on the impact of this improvement or the difficulty of the problem Jafarov solved); *cf., e.g.*, *Goncharov v. Allen*, No. 21 Civ. 1372 (JJB), 2022 WL 17327304, at *5 (N.D. Tex. Nov. 29, 2022) (affirming USCIS's denial when "letters submitted failed to provide specific evidence as to how [the petitioner] impacted his field").  USCIS did not err in determining that the absence of detail about the actual impact of Jafarov's work, and the limited citations his work had thus far received, meant that he did not satisfy this criterion.

### B.      Second-Step Determination

Jafarov next challenges USCIS's ultimate determination.  He argues that, even if USCIS's assessment of the first-step criteria was sound, its review at the second step minimized the quality of, and misstated, the evidence he produced.  Pl. Br. at 25–30.  The Court, however, finds USCIS's second-step determination supported and well within its discretion.

The Court addresses Jafarov's three primary arguments on this point.

First, Jafarov argues that USCIS "[m]isstated" the record of his scholarly articles.  Pl. Br. at 25.  In his view, USCIS erred by (1) requiring him to "show the significance" of the publications, which should be considered only "during the first step," (2) "falsely assert[ing]" that he did not submit evidence as to how his publication record compares to others in the field, and (3) not considering "the prestige level of the journals" in which he published.  *Id.* at 25–26.

This argument is without merit.  As to (1), it was not inappropriate for USCIS to consider the publications' significance in the ultimate merits determination; the purpose of the second step is to "consider the totality of the evidence," *Noroozi*, 905 F. Supp. 2d at 539, one element of which is the "significance of the person's contributions to the field of endeavor," POLICY

MANUAL, vol. 6, pt. F, ch. 2 at B.1.  *See, e.g.*, *Karim v. Allen*, No. 21 Civ. 2861 (WJM) (KLM),

2023 WL 4624896, at *8–9 (D. Colo. July 19, 2023).  As to (2), USCIS's determination that

Jafarov's testimonials were insufficient to establish his relative status in the field finds ample

support in the record; even the excerpts he quotes in his brief do little to compare him to others

in the field.  *See, e.g.*, AR 272 (asserting that Jafarov "has truly extraordinary abilities as a

computer scientist"); AR 272–73 (noting that Jafarov has published in "one of the two most

prestigious venues in the field," but not noting how many others have published there or how

many pieces it publishes).  And as to (3), although the "particular prestige or acclaim" associated

with an academic journal might be relevant in some cases, as USCIS acknowledges, POLICY

MANUAL, vol. 6, pt. F, ch. 2 at B.2, USCIS is not required to address "every piece of evidence

the petitioner presents," *Golani v. Allen*, No. 22 Civ. 10202 (FKB), 2023 WL 4874767, at *9

(E.D. Mich. July 31, 2023).  It was not unreasonable for USCIS to focus, instead, on the fact that

a "publication record of six publications from 2015 and 2022" is inconsistent with "a *career* of

acclaimed work and *sustain[ed]* national or international acclaim"—whether those publications

were in prestigious or lesser journals.  AR 7 (emphasis added); *see, e.g.*, *Hristov*, 2011 WL

4711885, at *8 ("Examination into sustained acclaim is a component of the 'final merits

determination' of whether the evidence shows extraordinary ability.").

Second, Jafarov argues that USCIS's assertion that the record lacked sufficient

"comparative data" as to his compensation is "plainly contrary to the evidence."  Pl. Br. at 27.

He "submitted comparative data," he argues, that shows that his "salary of $168,000 combined

with his bonus of $75,000 places him above the 90th percentile of all Research Scientists in the

U.S." and thus "he is one of that small percentage that has risen to the very top of his field."  *Id.*

Reasonable minds can differ as to the importance of this compensation data, but the Court cannot find USCIS's interpretation of the record erroneous. The data Jafarov adduced placed him above the 90th percentile of computer scientists, both nationwide, AR 128–29 (Bureau of Labor Statistics), and in the New York area, AR 125 (O*Net OnLine). USCIS credited that evidence and found he met the relevant criterion. AR 7. USCIS's determination, however, was that Jafarov's presence in the top 10% of employees, although impressive, was not so impressive as to place him at "the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2). That evaluation was reasonable. To hold otherwise would appear to require USCIS to find that all employees—absent other disqualifying characteristics—in the 90th percentile of their given field have reached that field's pinnacle. Such would make the extraordinary ability visa "look less like an Einstein visa and more like a Lake Wobegon one." *Amin*, 24 F.4th at 395; *see also Hamal v. DHS*, No. 21-5160, 2023 WL 1156801, at *3 (D.C. Cir. Jan 31, 2023) (per curiam) (noting that "a high salary" is often "insufficient to establish" that an applicant is "singularly exceptional"). It was likewise permissible for USCIS to note that Jafarov had failed "to show a consistent history" of such earnings. AR 7. The statute requires "*sustained* national or international acclaim," 8 U.S.C. § 1153(b)(1)(A)(i) (emphasis added), and a single year's (or even a few years') worth of salary data is unlikely to satisfy that requirement, *see, e.g.*, *Hamal*, 2023 WL 1156801, at *2; *Hristov*, 2011 WL 4711885, at *8; *Rijal*, 772 F. Supp. 2d at 1347.

Third, Jafarov takes issue with USCIS's failure to credit him with 15 peer reviews. Pl. Br. at 25–26. It credited him with only three. *Id.* at 25. In Jafarov's view, the finding that he "ha[s] not garnered wide attention from the field" is "plainly contrary to the evidence," such that USCIS's final merits determination must be "arbitrary and capricious." *Id.*

The Government rightly concedes USCIS's tabulation error.  Def. Br. at 21.  But the error, the Court finds, was clearly harmless.  USCIS credited Jafarov with having shown "participation . . . as a judge of the work of others" in the field.  AR 3.  And its ultimate objection to the evidence he offered on this point—that he had not shown how "his review experiences compare to others at the very top of the field"—would remain the same whether he had three or 15 peer reviews to his name.  AR 7.  Further, as the Government notes, almost all of those reviews took place in the three months before Jafarov filed his petition.  Def. Br. at 21.  Such recency made reasonable USCIS's concern that "these judging events," dating back only to 2018, do not show "a *career* of acclaimed work in the field."  AR 7 (emphasis added).  The additional peer reviews thus do not assist Jafarov to prove, as required, "not just that he is accomplished, . . . but also that . . . he has sustained national or international acclaim over time." *Hamal*, 2023 WL 1156801, at *2.

Where "it is clear that the agency would adhere to its prior decision in the absence of error," no remand is required.  *Xiao Ji Chen*, 471 F.3d at 338; *see also Magellan Tech., Inc. v. FDA*, 70 F.4th 622, 629 (2d Cir. 2023).  USCIS's error was harmless as the additional 12 peer reviews would not establish sustained acclaim.  As such, the Court has no warrant to overrule USCIS's conclusion or to order remand to the agency.  Its decision, the Court finds, was both "reasonable and reasonably explained."  *Prometheus Radio Project*, 141 S. Ct. at 1158.

* * *

In sustaining USCIS's determination, the Court is not unsympathetic to Jafarov's plight. He has shown genuine promise as a computer scientist.  He graduated with sterling credentials from a prestigious institution and now works in a cutting-edge field at a company celebrated for its innovation.  He has much to offer.  Letters from professors tout his "extraordinary abilities

and potential," his impressive "technical skills, . . . vision of the field, and . . . work ethic[]," and his capacity "to make outstanding contributions to machine learning, algorithms, and optimization."  AR 262, 273, 281.  But the Court here is not charged with deciding whether the United States will benefit from Jafarov's presence.  Its charter instead is to decide whether USCIS acted arbitrarily in determining Jafarov was not "extraordinary" but merely very good.  *Cf. Amin*, 24 F.4th at 386; *Visinscaia*, 4 F. Supp. 3d at 129.  In light of the agency's careful review of the assembled evidence chronicling Jafarov's accomplishments and status at this relatively early stage of his career, the Court cannot find its decision to have been arbitrary or capricious.  The Court must therefore deny Jafarov's request for relief under the APA.

### C.  Declaratory Judgment

The Court also denies Jafarov's motion for declaratory judgment pursuant to 28 U.S.C. § 2201.  The Declaratory Judgment Act is not "a source of substantive rights."  *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 431 (S.D.N.Y. 2002).  It is a procedural mechanism by which one may "'avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage has accrued.'"  *United States v. Doherty*, 786 F.2d 491, 498 (2d Cir. 1986) (Friendly, J.) (quoting *Luckenbach S.S. Co. v. United States*, 312 F.2d 545, 548 (2nd Cir. 1963)).  Here, for the reasons set forth above, Jafarov has not demonstrated the existence of any right that is being or is likely to be infringed.  There is thus no basis upon which to grant declaratory relief.

**CONCLUSION**

For the foregoing reasons, the Court grants the Government's motion and denies

Jafarov's motion.  The Clerk of Court is directed to terminate all pending motions, enter

judgment in favor of defendants, and close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: January 5, 2024
     New York, New York